IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLOS MANUEL CALZADO DIAZ, | ) <br> ) <br> ) |
| Petitioner, | ) <br> ) |
| v. | )    Case No. 3:25-cv-00458 |
| | )    Judge Stephanie L. Haines |
| KRISTI NOEM, *Secretary of DHS*, *et al.*, | ) <br> ) <br> ) |
| Respondents. | ) |

## OPINION

Petitioner Carlos Manuel Calzado Diaz ("Mr. Calzado Diaz"), who is currently detained at Moshannon Valley Processing Center ("MVPC"), has filed a Habeas Petition, naming as Respondents: Kristi Noem, Secretary of the Department of Homeland Security ("DHS"); DHS; Pameli Bondi, Attorney General of the United States; John D. Tsoukaris, the Director of the Philadelphia Field Office of U.S. Immigrations and Customs Enforcement ("ICE"); and the Warden of MVPC (collectively, "Respondents"). Mr. Calzado Diaz has also filed a Motion for a Preliminary Injunction ("Motion for a P.I.") that is ripe and pending before the Court. (ECF Nos. 2, 12).

Mr. Calzado Diaz's Habeas Petition and Motion for a P.I. primarily hinge on one issue—whether Mr. Calzado Diaz may be detained under 8 U.S.C. § 1225(b)(2) or is instead detained under 8 U.S.C. § 1226(a), and therefore entitled to a bond hearing. For the following reasons, the Court finds that, because Mr. Calzado Diaz was detained inside the country as opposed to at the border, his detention is governed by § 1226(a) rather than § 1225(b)(2), and Respondents must afford him a bond hearing. Accordingly, the Court GRANTS Mr. Calzado Diaz's Habeas Petition

at ECF No. 1 insofar as he seeks a bond hearing. The Court DENIES the filings at ECF Nos. 1 and 2 in all other respects.[1]

**I.     Background**

This case primarily hinges on the interpretation of 8 U.S.C. §§ 1225(b)(2) and 1226(a). Therefore, the Court only provides brief background information before turning to the relevant legal issues.

Mr. Calzado Diaz represents that he is a 33-year-old citizen of the Dominican Republic who "entered the United States on or about November 29, 2022, was paroled and subsequently released." (ECF No. 1 at 4). According to Mr. Calzado Diaz, following his initial release from custody, he has "fully complied with all terms" of his release. (*Id.*). Then:

> On September 29, 2025, during a routine ICE check-in at the Philadelphia Field Office, officers instructed Mr. Calzado Diaz to report to the third floor, and, without prior notice, hearing, or explanation, abruptly revoked his parole and detained him. He was initially transported to the Federal Detention Facility (FDC) in Philadelphia, a facility designed for criminal incarceration. [He] was later transferred to [MVPC] in Philipsburg, Pennsylvania.

(*Id.* at 4–5). Finally, Mr. Calzado Diaz states that: (1) he is married to an American citizen, (2) he and his wife have filed documents that remain pending before USCIS, and (3) the adjudication of those documents will "determine his eligibility for lawful permanent residency." (*Id.* at 5).

For their part, Respondents assert that:

---

[1] Upon consideration of all of the relief that Mr. Calzado Diaz seeks via his Habeas Petition, (ECF No. 1 at 18), the Court finds that a bond hearing is the entirety of the relief due to him under the law. Further, the Court notes that, in his Motion at ECF No. 2, which was initially a Motion for a Temporary Restraining Order ("TRO") and a P.I., Mr. Calzado Diaz requested an order: (1) barring his transfer away from MVPC, (2) prohibiting Respondents from detaining him under § 1225(b)(2), and (3) requiring Respondents to immediately release him from custody. (ECF No. 2 at 7). As the Court explained in its Memorandum Order denying Mr. Calzado Diaz's request for a T.R.O., (ECF No. 8), it lacks jurisdiction to enjoin his transfer to another District. (*Id.* at 3–4). And, as the Court explains in the text below, Mr. Calzado Diaz is entitled to a bond hearing, but he has not shown that he is entitled to immediate release. Therefore, the only claim upon which Mr. Calzado Diaz has shown a likelihood of success on the merits is his request for a bond hearing. But the Court is granting him that relief in its ruling on his Habeas Petition, rendering that request for a P.I. moot. Accordingly, the Court denies Mr. Calzado Diaz's Motion at ECF No. 2 as either unavailing or moot.

2

> [Mr.] Calzado Diaz is a native and citizen of the Dominican Republic. He was born on March 30, 1992. He entered the United States on or about November 2, 2022[,] at an unknown location. He was not in possession of valid immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act [(the "INA")]. He was not then admitted or paroled.
>
> On November 29, 2022, [Mr.] Calzado Diaz was issued a Notice to Appear in Immigration Court in Conrow, TX on December 15, 2022. That Notice charged that he was subject to removal from the United States pursuant to Section "212(a)(7)(A)(i)(I) of the [INA] as an immigrant who, at the time of application for admission, is not in possession of valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document as required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under regulations issued by the Attorney General under section 211(a) of the Act." The Notice also charged that [Mr.] Calzado Diaz was removable under "212(a)(6)(A)(i) of the Act as an alien present in the United States without being admitted or paroled, or who has arrived in the United States at any time or place other than as designated by the Attorney General.["] Finally, the Notice stated that it was "being issued after an asylum officer has found that [Mr.] Calzado Diaz had demonstrated a credible fear of persecution or torture." At some point, he was released from custody.
>
> On October 22, 2023, [Mr.] Calzado Diaz married Maria Mercedes Martinez in Pennsylvania. In March 2024, Martinez submitted a Form I-130, Petition for Alien Relative.
>
> [Mr.] Calzado Diaz was detained by ICE on September 29, 2025. He is currently housed at MVPC.

(ECF No. 12 at 6–7) (cleaned up).

The parties to this case agree that Respondents are detaining Mr. Calzado Diaz pursuant to § 1225(b)(2) and therefore holding him without a bond hearing. Notably, Respondents are doing so because of interim guidance that DHS issued on July 8, 2025. (ECF No. 12 at 20). That guidance provides that "all aliens who enter the country without being admitted or who otherwise arrive in the United States without proper documentation are subject to detention under [8 U.S.C. § 1225(b)] and may not be released from custody except by INA § 212(d)(5) parole." (*Id.*). The Board of Immigration Appeals (the "BIA") "soon adopted this interpretation [of the law] in" *Matter of*

3

*Yajure Hortado*, 29 I&N. 216 (BIA 2025). (*Id.* at 1, 21). In doing so, the BIA concluded that Immigration Judges lack authority to hear bond requests or otherwise grant bond to aliens "who are present in the United States without admission." (*Id.* at 21) (internal quotation marks and citation omitted).

For his part, Mr. Calzado Diaz argues that he cannot be detained pursuant to § 1225(b)(2), and he may only be detained under § 1226(a), which requires a bond hearing. (ECF Nos. 1, 2).

The Court now turns its attention to resolving the issue of which statute governs Mr. Calzado Diaz's detention, which in turn resolves many of the issues that Mr. Calzado Diaz is currently presenting to the Court.

## II. Discussion

### A. Jurisdiction

"The Supreme Court has held that § 2241 confers jurisdiction upon the federal district courts to consider cases challenging the detention of aliens during removal proceedings." *Bystron v. Hoover*, 456 F. Supp. 3d 635, 640 (M.D. Pa. 2020) (citing *Demore v. Kim*, 538 U.S. 510 (2003); *Zadvydas v. Davis*, 533 U.S. 678 (2001)). Thus, "a habeas petition under § 2241 is the proper vehicle for an inmate to challenge 'the fact or length of confinement,' *Preiser v. Rodriguez*, 411 U.S. 475, 494 (1973), or the 'execution' of his confinement." *Bystron*, 456 F. Supp. at 640 (quoting *Woodall v. Fed. BOP*, 432 F.3d 235, 241–42 (3d Cir. 2005)). Indeed, a district court "may issue a writ of habeas corpus when a petitioner is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* (internal quotation marks and citation omitted); 28 U.S.C. § 2241(c)(3).

### B. Relevant Principles of Statutory Interpretation

When interpretating a statute, this Court's "job is to interpret the words consistent with their 'ordinary meaning ... at the time Congress enacted the statute.'" *Wis. Ctr. Ltd. v. United States*, 585 U.S. 274, 277 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). This Court's "analysis begins with the plain language of the statute[,]" and where that language is "plain, [a court] must enforce it according to its terms." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009); *see also United States v. Brow*, 62 F.4th 114, 119 (3d Cir. 2023) (noting that a "court considers the language of a statute in its natural and ordinary signification and if there is no ambiguity or obscurity in its language, there will usually be no need to look elsewhere to determine its intent"). Further, statutory language "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 101 (2012) (internal quotation marks and citation omitted).

### C. § 1226(a) Governs Mr. Calzado Diaz's Detention

In interpreting §§ 1225(b)(2) and 1226(a), the Court begins with the relevant language of each provision.

In pertinent part, 8 U.S.C. § 1225 provides:

**§ 1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing**

**(a) Inspection**

**(1) Aliens treated as applicants for admission**

An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

**(2) Stowaways**

5

An arriving alien who is a stowaway is not eligible to apply for admission or to be admitted and shall be ordered removed upon inspection by an immigration officer. Upon such inspection if the alien indicates an intention to apply for asylum under section 1158 of this title or a fear of persecution, the officer shall refer the alien for an interview under subsection (b)(1)(B). A stowaway may apply for asylum only if the stowaway is found to have a credible fear of persecution under subsection (b)(1)(B). In no case may a stowaway be considered an applicant for admission or eligible for a hearing under section 1229a of this title.

**(3) Inspection**

All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers.

**(4) Withdrawal of application for admission**

An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States.

**(5) Statements**

An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States, including the applicant's intended length of stay and whether the applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible.

**(b) Inspection of applicants for admission …**

   **(2) Inspection of other aliens**

      **(A) In general**

      Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

      **(B) Exception**

      Subparagraph (A) shall not apply to an alien—

>   (i) who is a crewman,
>
>   (ii) to whom paragraph (1) applies, or
>
>   (iii) who is a stowaway.

Turning to § 1226, the pertinent language of that provision provides:

**§ 1226. Apprehension and detention of aliens**

**(a) Arrest, detention, and release**

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—

>   **(1)** may continue to detain the arrested alien; and
>
>   **(2)** may release the alien on—
>
>   >   **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>   >
>   >   **(B)** conditional parole; but
>
>   **(3)** may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

Upon careful examination of these two statutes, and for the following reasons, the Court finds that § 1225(b)(2) is tethered more closely to the border and speaks to the potential detention of aliens there, whereas § 1226(a) applies more readily to the potential detention of aliens who have been living within the country.

The Court's first reason for reaching this finding is the Supreme Court's decision in *Jennings v. Rodriguez*, 538 U.S. 281 (2018). Therein, a majority of the Justices then on the

Supreme Court[2] indicated that they view § 1225 as more closely tethered to the border and § 1226 as applying more readily to the interior of the country. Indeed, the Court wrote that:

> [The process of beginning to decide who may enter the country and who may stay here after entering] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible. Under § 302, 110 Stat. 3009-579, 8 U.S.C. § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2). Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. *See* § 1225(b)(1)(A)(i) (citing §§ 1182(a)(6)(C), (a)(7)). Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion. *See* § 1225(b)(1)(A)(iii).[3] Section 1252(b)(2) is broader. It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here). *See* §§ 1225(b)(2)(A), (B).
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens. Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of

---

[2] Although part of Justice Alito's Opinion in *Jennings* was a plurality decision, the portions that this Court cites below stem from that part of Justice Alito's Opinion that was joined by a majority of the Justices that were on the Supreme Court at the time that it decided *Jennings*.

[3] The Court notes that this subsection permits the Attorney General to apply Section 1225(b)(1) to "any or all aliens described in subclause (II) as designated by the Attorney General." 8 U.S.C. § 1225(b)(1)(A)(iii)(I). That subclause describes such an alien as one who "is not described in subparagraph (F), who has not been admitted or paroled in the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year-period immediately prior to the date of the determination of inadmissibility under this subparagraph." *Id.* § 1225(b)(1)(A)(iii)(II). In other words, the INA, *via § 1225(b)(1),* "allows the DHS to expeditiously remove certain aliens apprehended up to two years after entering the United States and who were encountered anywhere within United States territory[.]" *Osorio-Martinez v. Att'y Gen. U.S.*, 893 F.3d 153, 173 (3d Cir. 2018).

Of course, Respondents are not purporting to detain Mr. Calzado Diaz under § 1225(b)(1), nor could they in light of the fact that he has been in this country for over three years. *See supra* Section I. Therefore, the Court need not concern itself with the application of § 1225(b)(1) in this case. However, the presence of this provision within § 1225 does counsel against a reading of §1225 that says *it only* applies *immediately* at the border. And indeed, the Court does not reach such a finding in this case. Instead, the Court simply finds that § 1225 is tethered *more closely* to the border, whereas § 1226 speaks *more* to the interior of the country. As applied to Mr. Calzado Diaz, who has been present in the country for over three years and was detained in Philadelphia, Pennsylvania, *see supra* Section I, the Court finds that § 1226(a), not § 1225(b)(2), governs his detention.

> persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. § 1225(b)(2)(A).
>
> Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3 (2017). Such parole, however, "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, when the purpose of the parole has been served, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Ibid.*

*Jennings v. Rodriguez*, 583 U.S. 281, 286–88 (2018).

> Shifting to § 1226, the Supreme Court explained that:
>
> Even once inside the United States, aliens do not have an absolute right to remain here. For example, an alien present in the country may still be removed if he or she falls "within one or more ... classes of deportable aliens." § 1227(a). That includes aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission.
>
> Section 1226 generally governs the process of arresting and detaining that group of aliens pending their removal. As relevant here, § 1226 distinguishes between two different categories of aliens. Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on ... bond" or "conditional parole." *Ibid.*
>
> Section 1226(c), however, carves out a statutory category of aliens who may *not* be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. § 1226(c)(1).[4] The Attorney General may release aliens in those categories "only if the Attorney General decides ... that release of the alien from custody is necessary" for witness-protection purposes and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled

---

[4] The Court has before it no indication that this provision applies to Mr. Calzado Diaz.

9

>   proceeding." § 1226(c)(2). Any release under those narrow conditions "shall take place in accordance with a procedure that considers the severity of the offense committed by the alien." *Ibid.*
>
>   In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).

*Jennings*, 583 U.S. at 288–89 (emphasis in original).

To this Court, the foregoing language compels the conclusion that a majority of the Justices on the Supreme Court when it decided *Jennings* viewed § 1225 as tethered more closely to the border and § 1226 as applying more readily to the interior of the country. But what about Respondents' argument that "no part of the holding in *Jennings* required it to decide the precise scope of Sections 1225(b) and 1226[?]" (ECF No. 12 at 42–43). In other words, what if this language from *Jennings* is only dicta?

Assuming without deciding that the language from *Jennings* above is solely dicta, the Court observes that it has before it no Supreme Court precedent holding that Respondents' interpretation of §§ 1225 and 1226 is correct. Therefore, based on this Court's reading of *Jennings*, the Court sets forth a metaphorical scale. On the side of that scale that is assessing the strength of Respondents' reading of the statute, there is no weight added by the Supreme Court. On the other side of the scale, that assessing the strength of the reading that says § 1225 is tethered more closely to the border and § 1226 applies more readily to the interior of the country, there is the weight of Supreme Court dicta. Most assuredly, that dicta from the Supreme Court, which this Court "should not idly ignore[,]" *In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000) ("[W]e should not idly ignore considered statements the Supreme Court makes in dicta."), tips the scale (and this Court) *heavily* in favor of finding that § 1226(a) applies to Mr. Calzado Diaz.

10

The Court's second reason for finding that § 1226(a) governs Mr. Calzado Diaz's detention is that the first part of the title of § 1225 is "Inspection by immigration officers[.]" Likewise, § 1225(a) is entitled "Inspection[.]" On the other hand, § 1226 is entitled "Apprehension and detention of aliens[.]" *Dubin v. United States*, 599 U.S. 110, 120–21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.") (internal quotation marks and citation omitted). As this Court has previously explained, all of this confirms the Court's read of the two provisions—"§ 1225 is tethered more closely to the border and applies more readily to someone with a weak connection to the country, while § 1226 is tethered more closely to the interior of the country and applies more readily to someone with a strong connection to the country." *Del Cid v. Bondi*, No. 3:25-CV-304, 2025 WL 2985150, at *16 (W.D. Pa. Oct. 23, 2025).

In the same way, § 1225(a)(3) provides that all aliens "who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." And there is precedent indicating that inspections "occur at ports of entry, their functional equivalent, or near the border." *Zumba v. Bondi*, No. 25-CV-14626 (KSH), 2025 WL 2753496, at *8 (D.N.J. Sept. 26, 2025). Accordingly, the Court finds that many portions of the language of § 1225 indicate that it is closely tethered to the border.

Therefore, based on the Supreme Court's language in *Jennings* and the wording of §§ 1225 and 1226, the Court finds that § 1225 is tethered more closely to the border and § 1226 applies more readily to the interior of the country. In reaching this holding, the Court notes that "the *vast* majority of district courts that have arrived at the same conclusion." *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *7 (D.N.J. Oct. 22, 2025) (collecting cases).[5]

---

[5] In reaching this conclusion, the Court makes one note that may distinguish it from at least certain other district courts. There is caselaw on the interplay between §§ 1225/1226 that makes a distinction between an alien who is "actively"

11

Applying the Court's finding to Mr. Calzado Diaz, the Court reiterates that he has now been present in this country for over three years, and he was detained in Philadelphia, Pennsylvania, which is quite some distance from a border, a port of entry, or the like. *See supra* Section I. Therefore, the Court holds that § 1226(a) governs his detention, not § 1225(b)(2).

Critically, Federal Regulations "provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 538 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Accordingly, the Court will order Respondents to provide Mr. Calzado Diaz with a bond hearing consistent with § 1226(a) and all related provisions of law within seven (7) days of the date of this Opinion.

All of that leaves the Court with a final question—should it order Mr. Calzado Diaz released from custody, as opposed to simply ordering that Respondents provide him with a bond hearing? On that score, the Court finds that Mr. Calzado Diaz has failed to show he is entitled to the relief he is seeking. Indeed, § 1226(a) permits the detention of aliens arrested within the country. Further, as the Third Circuit has observed, "the due process afforded aliens stems from those statutory rights granted by Congress and the principle that minimum due process rights attach to statutory rights." *Osorio-Martinez*, 893 F.3d at 172 (cleaned up). Therefore, upon consideration

---

or "affirmatively" seeking admission into the country and one who is not. *Bethancourt Soto*, 2025 WL 2976572, at *6–7. This Court stresses that it declines to adopt that rationale as part of the basis for its decision. Instead, this Court simply finds that, generally speaking, § 1225 speaks of "applicants for admission" who are "at or near the border or a port of entry," whereas § 1226 speaks to individuals within the country and possessing greater connection thereto.

All of this might seem like a distinction without a meaning, but the Court does not see it as such. Indeed, consider Mr. Calzado Diaz. If the application of § 1225 turned on whether or not an individual was actively seeking admission to the country, would Mr. Calzado Diaz, who, along with his wife, has submitted documentation seeking lawful permanent resident status, be deemed someone actively seeking admission? In that case, would Mr. Calzado Diaz not be viewed as a better candidate for the application of § 1225 (and therefore detention without a bond hearing) than someone who was present in the country illegally *but not actively seeking lawful permanent resident status*? That potential outcome strikes this Court as very strange indeed. Accordingly, once again, the Court stresses that it finds that § 1225 is tethered more closely to the border, whereas § 1226 speaks more to the interior of country, regardless of whether or not a person who has been on the interior of the country for years is *actively* seeking admission.

of both Mr. Calzado Diaz's Habeas Petition at ECF No. 1 and his Motion for a P.I. at ECF No. 2, the Court finds that he is entitled to a bond hearing under § 1226(a), but no more.

### III. Conclusion

Having considered the entire record in this case and the relevant legal principles, the Court holds that Mr. Calzado Diaz is entitled to a bond hearing under 8 U.S.C. § 1226(a) and all related legal principles within seven (7) days of the date of this Opinion and grants his Habeas Petition insofar as he seeks such a bond hearing. Because Mr. Calzado Diaz's other request are unavailing (or mooted by the Court's partial grant of Mr. Calzado Diaz's Habeas Petition), the Court denies the balance of his Habeas Petition at ECF No. 1 and his Motion for a P.I. at ECF No. 2.

An appropriate Order follows.

DATED: December 15, 2025

STEPHANIE L. HAINES
U.S. DISTRICT COURT JUDGE